William J. Brennan and Lucile E. Brennan v. Commissioner.
Brennan v. Commissioner
Docket No. 649-62.
United States Tax Court
T.C. Memo 1963-243; 1963 Tax Ct. Memo LEXIS 103; 22 T.C.M. (CCH) 1222; T.C.M. (RIA) 63243; September 10, 1963
*103 The petitioner, an estate and gift tax examiner-reviewer for the Internal Revenue Service, completed a previously commenced night law school course in 1958. All of his fellow employees, including those whose work he reviewed, were law school graduates and members of the bar, and in the course of his official duties he conferred regularly with taxpayers' lawyers. Held: That the educational expenses were incurred primarily to maintain and improve petitioner's skills required by him in his employment and that such expenses are therefore deductible under section 162 of the 1954 Internal Revenue Code. Held, further, that the cost of a bar review refresher course taken by petitioner in 1958 was personal and not a deductible expense. Joseph E. Cook, Jr., 1212 Denver Club Bldg., Denver, Colo., for the petitioners. Arthur B. Bleecher, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The Commissioner disallowed a deduction of $386 taken by the petitioner as expenses for attending the Law School of the University of Denver in 1958. These expenses were itemized as follows: Denver University (Tuition)
$226.00
Martin P. Miller (Bar Review
Course)
80.00
Supreme Court (Bar Examina-
tion Fee)
50.00
Miscellaneous (Books and Sup-
plies)
30.00
$386.00
The sole issue is whether or not these educational expenses were undertaken primarily for the purpose of maintaining or improving skills required by the taxpayer's employment and are, therefore, deductible under section 162 of the 1954 Code and section 1.162-5, Income Tax Regs. The petitioner has conceded that the $50 bar examination fee is not deductible. Findings of Fact Some of the facts *105 have been stipulated and are so found. The petitioners, William J. Brennan (hereinafter referred to as Brennan) and Lucile E. Brennan, are husband and wife, and were residents of Denver, Colorado, during the taxable year ended December 31, 1958. They filed their joint Federal income tax return for the taxable year 1958 with the district director of internal revenue at Denver, Colorado. Brennan majored in accounting at the College of St. Thomas, Saint Paul, Minnesota, where he received a Bachelor of Arts Degree in Business Administration in June 1949. Brennan entered the College of Law in Saint Paul, Minnesota, in the fall of 1949, but dropped out in November. On November 14, 1949, he was appointed a revenue agent with the then Bureau of Internal Revenue at a salary grade of GS-7. His post of duty was Minneapolis, Minnesota. During the period, January 9 to March 1, 1950, Brennan successfully undertook and completed four courses conducted by the Training Division of the then Bureau of Internal Revenue at Chicago. He took both an individual and a corporate income tax course and an individual and a corporate report writing course in which he received an overall grade of "Good" out *106 of the possible grades of Excellent, Good, Satisfactory, and Unsatisfactory. These courses were two weeks each and were highly concentrated with the greater emphasis being placed on the practical side rather than on the theoretical. On December 7, 1951, Brennan successfully completed a course in Evidence and Procedure conducted by the Training Division of the then Bureau of Internal Revenue in Saint Paul, Minnesota. The course consisted of 11 subcourses and the grade of "Excellent" was achieved in all. Then on December 23, 1951, he was promoted to a salary grade of GS-9. On December 22, 1952, he successfully completed a course in estate tax law, conducted by the Training Division of the then Bureau of Internal Revenue. This course consisted of 24 subcourses and he received a grade of "Excellent" in 21 of them and "Good" in the other 3 subcourses. On August 30, 1953, Brennan was appointed to the position of estate and gift tax examiner in Minneapolis, Minnesota, at his same salary grade of GS-9. During the years 1953 and 1954 he attended the Minneapolis College of Law. His post of duty was changed to Saint Paul, Minnesota, on August 29, 1954, and he was promoted to a salary grade *107 of GS-11. On July 31, 1955, he was transferred to Denver, Colorado, but his salary and classification of estate and gift tax examiner remained the same. He applied for admission to the Westminster Law School on August 24, 1955. On his application for admission he answered the following questions: After completing your law studies do you intend to practice? Yes. In Colorado? Yes. In another portion of the application he answered a similar question: Do you intend to practice law in the State of Colorado? Yes. He understood that the practice of law included working for the Government or for a corporate employer as well as hanging up a shingle. On May 22, 1956, he applied for the position of estate and gift tax reviewer at a salary grade of GS-12. At this time he had completed 32 hours of study at the Minneapolis College of Law, and 20 hours at Westminster Law School, but he had not yet acquired a bachelor of laws degree. He received this appointment as the sole estate and gift tax examiner-reviewer in the Denver office on September 23, 1956. At that time petitioner was the only examiner in the Denver office who was not a law graduate. He was considered the best qualified *108 applicant due to his experience as an examiner and the fact that he demonstrated a good perception of legal principles. His supervisor recommenced him for the promotion. As an estate and gift tax reviewer, Brennan was responsible for reviewing the reports of the examiners both as to accuracy and as to the correct application of the laws. He either passed the report through or sent it back for further examination or correction. He also held informal conferences in a 3-state area, principally with lawyers representing taxpayers. Estate and gift tax law is affected by many other areas of the legal field, such as, contracts, property law, wills, income tax, etc. It was necessary for Brennan, in order to perform his duties properly, to have a very broad knowledge of law, and his primary purpose in attending law school and earning his LLB degree in 1958 was to maintain and improve his skills as an estate and gift tax examiner-reviewer. During 1958, the year at issue, Brennan took courses at night and received grades from the Law College of Denver University (Westminster Law School was merged into Denver University in 1957), as follows: Quarter
Grade
Winter Quarter 1958
Hours
Grade
Point
Constitutional Law II
2
B
4
Taxation II
2
A
6
Moot Court
2
P
Spring Quarter 1958
Taxation III
4
A
12
Constitutional Law III
2
B
4
Labor Law
2
C
2
Moot Court V
2
P
*109 On June 6, 1958, Brennan was awarded the degree of Bachelor of Laws by the University of Denver. He was admitted to practice before the Bar of the State of Colorado and before the United States District Court at Denver, Colorado, on September 7, 1958. In May of 1959 Brennan was approached by the vice president and trust officer of the Denver U.S. National Bank at Denver, Colorado, with respect to possible employment with the bank. Up until that time Brennan had no intention of leaving the Government. In fact, in the spring of 1959, he had applied for a vacancy in the Appellate Division. On July 24, 1959, Brennan resigned his position with the Internal Revenue Service in order to take a position with the Trust Department of the bank. In January 1960, he was promoted to Assistant Trust Officer by the bank and in January 1961 to Trust Officer. Opinion On April 3, 1958, the Treasury Department adopted new regulations in T.D. 6291, which liberalized the rules for deductibility of educational expenses under section 162 of the Internal Revenue Code of 1954. [1] In order to be deductible under these regulations the education must not be undertaken *110 to meet the minimum requirements of the position, but instead it must be primarily for the purpose of either (1) maintaining or improving needed skills, or (2) meeting the express requirements of the employer. *111 Brennan has been a reviewer since 1956 and clearly meets the minimum requirements of his position with or without the courses taken in 1958 or a law degree. Since there is no express requirement that he obtain a law degree, he clearly does not come within the second purpose enumerated in the regulations. In order to justify the deduction, therefore, he must show that these educational expenses were incurred primarily for the purpose of maintaining or improving needed skills. As stated in the regulations, qualification under this test depends upon the facts and circumstances of each case, and they go on to state that "if it is customary for other established members of the taxpayer's trade or business to undertake such education" then he will be considered to have undertaken it for the purpose of maintaining or improving needed skills. Here all of the examiners whose work Brennan had to review were attorneys and members of the bar. It is certainly the custom, if not the rule, that examiners are attorneys. This should be even more true of a reviewer who is their superior. In Carlucci v. Commissioner, 37 T.C. 695 (1962), about 25 to 33 percent of the people employed *112 had a doctoral degree and the others were working toward one. We held that this indicated that it was the custom for established members of the taxpayer's business to undertake such education. Since in Brennan's position a law degree is the custom, the regulations indicate a finding that his educational expenses be considered to have been primarily undertaken for the purpose of maintaining or improving skills required by his business. Cf. Martin J. Welsh, et al. v. United States, 210 F. Supp. 597 (N.D. Ohio, 1962). Although Brennan was admittedly well qualified to be a reviewer, it is apparent that any law courses and especially a law degree would improve and add luster to those qualifications. In dealing with attorneys, it is extremely beneficial to be able to think as an attorney thinks and to speak and understand the lawyers' lingo. The respondent contends that Brennan had already received extensive instruction in taxation, and needed no more. But the summit of knowledge, like the fruit of Tantalus, is never reached. His further legal education and the acquisition of a law degree unquestionably improved the skills required by him in his employment, and we have found *113 that his primary purpose in completing his law school education in 1958 was the improvement of those skills. Relying upon several memorandum decisions of this Court, the respondent correctly argues that law school expenses incurred with the primary intent to obtain minimum qualification for a new and differing position are nondeductible. Brennan's primary purpose, however, was to improve his skill in the position he then occupied, and he did not even apply for advancement until almost a year after his graduation from law school. Obviously his chances of advancement would be enhanced to some extent as is true of any education, but this was not his primary purpose. See Carlucci v. Commissioner, supra. The respondent claims that by stating in his application to Westminster Law School that he intended to practice law in Colorado Brennan indicated that he planned to get a law degree and to go into private practice. We believe, as Brennan testified, that his rather innocuous statement was meant to encompass practice with the Government. This statement does not necessarily indicate a positive intent to obtain a law degree, but even if it does we have found that such a degree *114 is customary for an estate and gift tax reviewer. After examining all the facts and circumstances of this case, we hold that Brennan undertook his legal education primarily to maintain and improve the skills required by his position as a reviewer. The $226 tuition fee and the $30 for books and supplies are deductible under section 162 of the 1954 Code and section 1.162-5, Income Tax Regs. The $80 fee for the Bar Review course was incurred for the purpose of passing the bar and not to improve skills required by the job. It is a nondeductible personal expense within the meaning of section 262 of the 1954 Code. O.D. 452, 2 C.B. 157. Decision will be entered under Rule 50. Footnotes
1. SEC. 162, I.R.C. 1954. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *. * * *
Sec. 1.162-5 of the Income Tax Regulations provides, in part: Sec. 1.162-5 Expenses for education. (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. * * * (b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.↩