Milton L. Schultz and Grace E. Schultz v. Commissioner.
Schultz v. Commissioner
Docket No. 972-62.
United States Tax Court
T.C. Memo 1964-227; 1964 Tax Ct. Memo LEXIS 112; 23 T.C.M. (CCH) 1372; T.C.M. (RIA) 64227; August 26, 1964
Melvin M. Engel, 469 Texas National Bank Bldg., Houston, Tex., for the petitioners. Thomas S. Loop, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1959 and 1960 in the amounts of $39.11 and $64.85, respectively. The issue for decision is whether petitioners are entitled to deduct expenses incurred by one of them in attending law school in the evenings while employed as an internal revenue agent assigned to the Estate and Gift Tax Group of the Audit Division of the Internal Revenue Service in Houston, Texas. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife residing in Houston, Texas, filed joint Federal income tax returns *113 for the years 1959 and 1960 with the district director of internal revenue at Austin, Texas. Milton L. Schultz, hereinafter referred to as petitioner, was graduated from Texas Lutheran College in June 1958 with a B.S. degree with at least 24 semester hours in accounting or related subjects. Prior to his graduation from Texas Lutheran College, petitioner had applied for an accounting position with the Internal Revenue Service and had been interviewed on May 7, 1958, in connection with this application. At the time of this interview petitioner had expressed preferences for posts of duty in San Antonio, Houston, and Harlingen, Texas, but had stated that he would accept a position anywhere in the United States if one were offered to him. He informed the panel interviewing him that he was interested in studying law and asked the panel if there were any positions in the Internal Revenue Service where a knowledge of law would be helpful or required. The interviewing panel discussed with him the Estate and Gift Tax Group in the Audit Division, and petitioner stated that he would be interested in being attached to such group. At the time of petitioner's interview, it appeared to the interviewer *114 that it was unlikely that petitioner would be reached for selection for the 1958 training program. However, due to the refusal of the position offered to him by one of the applicants selected for the 1958 training program, petitioner was reached, and on July 7, 1958, was employed by the Internal Revenue Service as an internal revenue agent with post of duty at Harlingen, Texas. At the time of his employment petitioner was placed in Grade GS-5 as a trainee, as was customary with new employees who had just been graduated from college, and was given 13 weeks of technical classroom training on the Internal Revenue Code, the methods and means of examining tax returns, certain public relation techniques, and an orientation and indoctrination program. Upon the successful completion of this training, petitioner was given on-the-job training in Harlingen, Texas, which training is likewise customary. On November 5, 1958, while in Harlingen in the process of his on-the-job training, petitioner wrote to the Chief of the Personnel Branch at Austin, Texas, inquiring as to the progress being made on his previous request to transfer to Houston, Texas, stating that he was still interested in transferring *115 "since I would like to enter law school at the University of Houston." Petitioner indicated that he would like to complete his training at Harlingen and stated that he presumed that it would be necessary that he do so in any event. Effective January 11, 1959, petitioner, who had at this time completed his on-the-job training, was transferred to Houston, Texas, to the Estate and Gift Tax Group. Upon this transfer petitioner was promoted to Grade GS-7, which is customary after the 6-month training period for any internal revenue agent who successfully completes his training. At the time petitioner was appointed as an internal revenue agent trainee, he met the minimum requirement for such a position, and upon the completion of his 6-month training period he met the minimum requirements for an internal revenue agent. At the time petitioner was employed by the Internal Revenue Service, the minimum requirement for an internal revenue agent trainee was the completion of 4 years of college level study, including 24 hours of accounting or related subjects. It was not required that an internal revenue agent have an LL.B. degree even though he was assigned to the Estate and Gift Tax Group. *116 There is a separate classification in the Internal Revenue Service of estate and gift tax examiner, which position and classification do require an LL.B. degree. The Chief of the Field Audit Branch of the Austin district of the Internal Revenue Service in which district petitioner was employed, was interested in selecting for employment as internal revenue agents, persons who were desirous of adding to their education and in this way improving themselves and becoming better in their positions. In February 1959 petitioner enrolled at the University of Houston, College of Law, pursuing a course of study which, if completed, would ultimately lead to an LL.B. degree. During 1959 petitioner successfully completed legal studies in contracts, torts, property I and II, domestic relations, administrative law, equity, and legal bibliography. Legal problems at times arose in the examination of returns assigned to internal revenue agents in the Estate and Gift Tax Group. These agents dealt with lawyers representing taxpayers. Generally, if an internal revenue agent assigned to the Estate and Gift Tax Group secured a law degree or passed the bar examination, his classification was changed *117 to an estate and gift tax examiner. In assigning work to internal revenue agents in the Estate and Gift Tax Group, legal education was one of the qualifications considered. It was customary for internal revenue agents assigned to the Estate and Gift Tax Group in Houston, Texas during the years 1959 and 1960 to attend law school. During the year 1960 petitioner was assigned to give on-the-job training to some internal revenue agents assigned to the Estate and Gift Tax Group and to at least one estate and gift tax examiner who had an LL.B. degree. Petitioner in his interview before the subcommittee on legal education of the Houston Bar Association around the time he was entering law school, stated that at that time he did not have an intention to practice law upon completion of his law school courses and admission to the bar. Upon questioning by the examiners, he said that the reason he was attending law school was because he considered himself committed to do so because of statements made in interviews when he had been employed in the position that he then held. Petitioner received his Bachelor of Laws degree in August 1963. Later in that year he left Government service and went *118 with an accounting firm, by which he was employed not in a legal position at the date of the trial in this case in April 1964. Petitioner's primary purpose in attending law school at the University of Houston and incurring the expenses incidental thereto was for improving the skills required in his employment as an internal revenue agent assigned to the Estate and Gift Tax Group. Petitioner on his income tax returns for the years 1959 and 1960 deducted as educational expenses for attending law school the amounts of $351.80 and $485.84, respectively, which deductions respondent disallowed with the following explanation: It is determined that educational expenses as claimed by you in the amounts of $351.80 and $485.84 for taxable years 1959 and 1960, respectively, are unallowable deductions, since the education was undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling general educational aspirations or other personal purposes. Opinion It is petitioner's position that he is entitled to deduct the expenses which he incurred in pursuing the study of law at the University of Houston under *119 section 162 of the Internal Revenue Code of 1954 and section 1.162-5(a)(1) of the Income Tax Regulations issued thereunder. Petitioner contends that the primary reason that he undertook this education was to improve the skills required in his position of an internal revenue agent assigned to the Gift and Estate Tax Group. The evidence supports petitioner's contention, and we have found as a fact that the primary purpose of petitioner's undertaking his legal education was to improve his skills in the position he then held. Petitioner, himself, testified specifically to this effect. Petitioner's immediate superior and other employees of the Internal Revenue Service testified to the general effect that petitioner, as were other internal revenue agents, was encouraged to pursue legal education, and a fair conclusion from their testimony is that the persons who evaluated petitioner's work as an internal revenue agent considered legal training helpful for an internal revenue agent and particularly for an agent assigned to the Estate and Gift Tax Group. It also appears that the work done by an internal revenue agent assigned to the Estate *120 and Gift Tax Group was reasonably comparable to that done by an estate and gift tax examiner and the requirement for a person employed in the latter position was that he have an LL.B. degree. This, in and of itself, demonstrates that legal education was considered helpful in this work. Likewise, it appears that an estate and gift tax examiner's position would not necessarily be a higher position than that of an internal revenue agent. The question here is one of fact, and this record supports petitioner's position. Welsh v. United States, 210 F. Supp. 597 (D.C.Ohio, 1962), affd. 329 F. 2d 145 (C.A. 6, 1964), and Condit v. Commissioner, 329 F. 2d 153 (C.A. 6, 1964), affirming per curiam a Memorandum Opinion of this Court. It may be that petitioner had some reasonable expectation that he would advance in position upon completion of his legal education and his admission to the bar. However, the facts in this case indicate that if petitioner's work were highly satisfactory, he might well obtain the same advancement in position without obtaining his law degree as he would after obtaining it. Even if petitioner reasonably might have expected *121 to advance more rapidly because of obtaining his LL.B. degree, this would not render the expenses nondeductible where petitioner's primary reason for undertaking the education was to improve his skills in the position he was then holding. Cosimo A. Carlucci, 37 T.C. 695 (1962). Because of an issue raised in the petition which has been abandoned by petitioners, Decision will be entered under Rule 50.